## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DAVID BRIGHTWELL,

    Plaintiff,

    v.

KASAHUN TEMESGEN, MD,
MICHAEL AGONAFIR, MD,
CAROLE SIMO, NP,
LUM MAXIMUANGU, CRNP,
HEIDI MILLER, RN,
NICOLE HARGRAVES,
JANE DOE 1 and 2,
WARDEN ROBERT DEAN,
COMMISSIONER G. MORGAN,
KIMBERLY REDDIT,
IESHA PRESSLEY,
SECRETARY CAROLYN SCRUGGS,
ROBIN WOOLFORD,

    Defendants.

Civil Action No.: BAH-23-3189

---

### MEMORANDUM OPINION

David Brightwell, a self-represented plaintiff who is incarcerated at Jessup Correctional Institution ("JCI") filed this civil rights complaint pursuant to 42 U.S.C. § 1983.[1]  In response Defendant "Jane Doe 2," who is described as an optometry nurse, filed a Motion to Dismiss (ECF 18); Defendants Dr. Kasahun Temesgen, Dr. Michael Agonafir, Carole Simo NP, Lum Maximuangu CRNP, Heidi Miller RN, and Nicole Hargraves[2] (collectively "Medical Defendants")

---

[1] Brightwell's complaint attaches copies of letters allegedly sent to several Defendants, grievances filed by Brightwell (and responses to those grievances), letters from health care providers, and a statement showing the balance of his prison commissary account.  *See* ECF 1-2, at 1–13.

[2] Hargraves is named as "JCI hospital administrator" in the complaint.

filed a Motion to Dismiss, or in the alternative, for Summary Judgment (ECF 31); and Defendants Warden Robert Dean, Commissioner G. Morgan, Administrative Remedy Procedure ("ARP") Coordinator Kimberly Reddit, Inmate Grievance Office ("IGO") Administrative Officer Ieasha Pressley, Sec. Carolyn Scruggs, and Deputy IGO Director Robin Woolford (collectively "Correctional Defendants") filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF 34).[3]

Brightwell has filed Motions for Temporary Restraining Order (ECF 10), Appointment of Counsel (ECF 20), and Sanctions (ECF 33), but has not filed an Opposition Response to the pending dispositive motions despite being advised of the consequences of failing to do so.  *See* ECFs 19, 32, and 36.

No hearing is required to address the pending motions.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, and by separate Order which follows, Brightwell's motions shall be DENIED, and the motions to dismiss filed by Jane Doe 2 and Correctional Defendants shall be GRANTED.  The motion filed by Medical Defendants shall be DENIED without prejudice pending the receipt of a status report as described below.

## I.     Background

### A.     Complaint Allegations

On October 27, 2022, Brightwell requested medical care through a sick call slip that explained his eyesight was worsening and he needed to be seen by an "outside expert eye Doctor." ECF 1-1, at 6.  He was seen on November 12, 2022, by "Jane Doe (2)," an optometrist who told

---

[3] The Clerk will be directed to amend the docket to reflect the full and correct spelling of Defendants' names as listed in the caption, which were taken from Defendants' motions to dismiss. *See* ECFs 31, 34.  The Court will refer to these spellings of Defendants' names throughout this opinion.

him he had a cataract in his left eye, and also told him that he needed a consultation with an eye doctor, which she requested.  *Id.*  According to Brightwell, as of June 3, 2023, nothing was done despite the assurance he would be put in for a consultation with an eye doctor.  *Id.* at 7.

Brightwell claims that Warden Robert S. Dean has failed to intervene on his behalf to secure the medical care he needs for treatment of his cataract.  ECF 1-1, at 6–7.  He also faults K. Reddit, the ARP Coordinator for Division of Correction Headquarters, for aiding and abetting Warden Dean's refusal to intervene on his behalf.  *Id.* at 7.  He adds that Commissioner of Correction G. Morgan "has repeatedly coverup [sic] for defendant Robert S. Dean" regarding Brightwell's serious medical need for his eyes.  *Id.*  Brightwell takes issue with Morgan's alleged assertion that Brightwell was a "no show" for medical appointments because the only way that could happen, Brightwell alleges, "is if JCI Correctional Staff did not come and get me there because defendant G. Morgan knew or should have known that [Brightwell] was still on segregation because Robert S. Dean wrongfully put him there on 6/18/18."  *Id.*  Brightwell states that Morgan was the Warden of MCIJ while Brightwell was housed at that facility, and Morgan approved Dean's decision to put Brightwell on segregation when Dean was Chief of Security at MCIJ.  *Id.*

On June 26 and July 12, 2023, Brightwell sent certified mail[4] to the Hospital Administrator at JCI but did not receive the "green card certified receipt."  ECF 1-1 at 8.  He surmises that Warden Dean "had his staff . . . make sure [Brightwell] did not receive his green card certified receipt so that [he] could not prove defendant JCI Hospital Administrator received either letter."  *Id.*

---

[4] Brightwell's letter dated June 26, 2023, states that his eyes are getting worse, optometry had recommended him to be seen by an outside eye doctor, and he has not been seen.  ECF 1-7.  He requested intervention on his behalf to secure the care he requires.  *Id.*

Brightwell sent letters on June 8[5] and August 23, 2023[6] to Dr. Temesgen regarding his need for cataract treatment, but Brightwell says his letter was ignored. *Id.* A letter sent by Brightwell to Secretary of Public Safety and Correctional Services Carolyn J. Scruggs, sent certified mail, regarding "all that was happening to him" also rendered no results.[7] *Id.* at 8–9.

Brightwell asserts that defendant I. Pressley assisted in the "wrongs" committed against him via the response to Brightwell's ARP. ECF 1-1, at 9; ECF 1-4, at 1–6. The ARP submitted on May 2, 2023, concerned Brightwell's complaint that the medical providers were ignoring his requests to be seen by a "eye expert doctor" since he began asking for it on January 6, 2021, when he was told he had a cataract in his left eye. *Id.* at 5. Despite his requests to Warden Dean to intervene on his behalf, Brightwell claims nothing was done with his complaints. *Id.* On June 8, 2023, the Warden dismissed Brightwell's ARP because Brightwell had been scheduled to be seen on May 30, 2023, but the provider cancelled. *Id.* at 6. Brightwell was seen on June 3, 2023. *Id.* Reddit dismissed Brightwell's ARP appeal to the Division of Correction because his appeal introduced a new complaint rather than stating why he disagreed with the Warden's response. *Id.* at 1. Specifically, Brightwell asserts that the optometrist he saw on June 3, 2023 said she did not know why he had not been seen by an outside eye doctor and that she was putting in a request for him to be seen. *Id.* at 3. He states in his appeal that he was diagnosed with a cataract on November

---

[5] In his June 8, 2023 letter Brightwell stated he had not received the consultation requested by optometry and requests Dr. Kasahun Temesgen's intervention. ECF 1-8.

[6] In his August 23, 2023 letter Brightwell complains about the lack of a consultation with an eye doctor, the change in his pain medication, and his unanswered requests to have his toenails cut. ECF 1-9.

[7] Brightwell's letter to Scruggs, dated May 26, 2023, reiterates his claims that Warden Dean, security staff, and medical providers at JCI are engaging in retaliation, abuse, conspiracy, and discrimination. ECF 1-10. He states that although he was told he had a cataract all he has been given is glasses which does not address the problem with his vision due to the cataract. *Id.* He adds that he was locked out of his tablet. *Id.*

4

12, 2022 and that the delay to June 3, 2023 for anyone to see him was unreasonable.  *Id.*  Defendant Pressley dismissed Brightwell's appeal to the Inmate Grievance Office because his complaint did not concern employees of the Division of Correction or Patuxent Institution.  ECF 1-5, at 1.

In addition to his need for cataract treatment, Brightwell claim that "since 5/23/23, he has put in several 'Sick Call Request/Encounter Forms' to have his toenails cut because of his being told that diabetes individuals must have someone cut their toenails for them."  ECF 1-1, at 9.  He states that his toenails are "so long" that they are "hard [and] bent over."  *Id.*

Brightwell alleges that he is the victim of a retaliation scheme instigated by Dean and Morgan as well as the medical providers because he refused to allow medical staff to draw blood from him until there is a cure for COVID-19.  ECF 1-1, at 9.  He claims that medical providers retaliated against him by stopping his pain medication that addressed injuries to his neck, back, right arm, and left knee.  *Id.* at 10.  Brightwell's claims regarding his pain medication and the alleged retaliation are addressed in Civil Action BAH-23-797 and thus will not be addressed here.

On August 11, 2023, when Brightwell saw Nurse Practitioner Lum Maximuangu, she allegedly told him that he was not seen by an "outside expert eye Doctor because of insurance." ECF 1-1, at 11.  Brightwell alleges that he told Maximuangu that "he can no longer see to read the words in the college dictionary he has."  *Id.*   Despite this information, according to Brightwell, Maximuangu did not "check[ his] eyes on [t]his visit . . . or anything of that nature."  *Id.*

Brightwell claims that Warden Dean "conspired with his 'Intel Staff' to change [Brightwell's] 'PIN NUMBER' on what is called a 'tablet'" and Brightwell is "unable to enter the 'tablet' as any other prisoner at JCI."  ECF 1-1, at 13.  He states that this amounts to abuse, conspiracy, discrimination, and harassment.  *Id.*  As a result, Brightwell is unable to call his family members on the tablet or the phone.  *Id.*

5

Brightwell asserts that the actions of Dr. Temesgen, Hospital Administrator Nicole Hargraves, Dr. Agonafir, "Jane Doe (1) [e]vening [n]urse of 8/1/23," "Jane Doe (2) [o]ptometry of 11/12/22 and 6/3/23," Carole Simo, Heidi Miller, and Lum Maximuangu violated his First, Fifth, Eighth, and Fourteenth Amendment rights. ECF 1-1, at 13. Additionally, he claims the same rights were violated by Defendants Dean, Morgan, Reddit, Pressley, Scruggs, and Woolford when they refused to intervene on his behalf when they became aware of his complaints that he was being denied medical care for his cataract. *Id.* Brightwell seeks declaratory judgment as well as monetary damages. *Id.* at 14–15.

### B. Jane Doe 2, Optometry Nurse

The Motion to Dismiss filed on behalf of Jane Doe 2 seeks dismissal of the complaint against her because there are no allegations in the complaint to support Brightwell's conclusory claim that she violated his constitutional rights. ECF 18. Specifically, she states:

> Plaintiff's Complaint is a rambling, stream-of-consciousness narrative that discusses generally alleged retaliation and conspiracy by correction staff at JCI, alleged failure of JCI staff to make Plaintiff available for medical appointments, alleged mishandling of Plaintiff's mail, the cutting of his toenails, COVID-19 vaccination, and adjustment of Plaintiff's pain medication. *See* Complaint generally. As to Jane Doe 2, the Complaint alleges that Plaintiff was seen by Jane Doe 2 on November 12, 2022 after complaining that his eyesight had deteriorated. Complaint, ¶18. Plaintiff alleges that Jane Doe 2 told him that he had a cataract on his left eye. *Id.* Plaintiff further alleges that Jane Doe 2 "was putting the plaintiff in to see an expert eye Doctor on 11/12/22 and 6/3/23 yet. Nothing was ever done." *Id.* at ¶22. Those are the extent of the "allegations" as to Jane Doe 2. Plaintiff does not allege that Jane Doe 2 treated him or had any further interaction with him.

ECF 18-1, at 1–2. As noted, the motion is unopposed.

### C. Medical Defendants

In their Motion to Dismiss or for Summary Judgment, Medical Defendants explain that Brightwell was not approved for cataract surgery by Utilization Management because he did not

meet the criteria for cataract surgery as set forth by the Federal Bureau of Prisons ("FBOP").[8] ECF

31.  Specifically, they state in pertinent part that:

> Surgery to repair a cataract in Plaintiff's left eye was not approved by Utilization
> Management ("UM"), the committee that reviews consultation requests
> submitted by providers for offsite specialty visits, including diagnostic tests and
> surgeries.  (*Id.* ¶ 6).  However, UM followed the recommendation of the Federal
> Bureau of Prisons ("FBOP"), which provides the following criteria for
> ophthalmologic surgery for inmates: "Cataract Surgery: There must be
> documentation of a best-corrected visual acuity of less than 20/60 in both eyes
> with current (less than six months old) refraction." (*See*
> https://www.bop.gov/resources/pdfs/opthamology_guidance_2008.pdf).
> Plaintiff saw an optometrist on June 3, 2023 and his visual acuity was
> documented as 20/50 OD (right eye) and 20/400 OS (left eye).  Plaintiff did not
> meet FBOP criteria for cataract surgery because the vision in both eyes was not
> worse than 20/60.  However, his visual acuity will continue to be monitored and
> he may be a candidate for surgery at a later time.  (*Id.*).

ECF 31-1 at 4, *see also* ECF 31-2 at 3, ¶ 6.  Medical Defendants provide records to support the

following course of care for Brightwell, which are detailed below.  Medical Defendants also

provide a sworn declaration of Dr. Temesgen which summarizes Brightwell's records and care.

ECF 31-2, at 1–18.

On January 6, 2021, Brightwell was seen by Dr. Khalid El-Bedawi for chronic care.  ECF

31-2, at 3 ¶ 7; ECF 31-9, at 4.  At that time, Brightwell had new glasses but complained of eye

discomfort and reported he was not using his glasses.  ECF 31-9, at 4.  Dr. El-Bedawi referred

Brightwell to "eye clinic" to rule out a cataract.  *Id.* at 5.

On April 27, 2021, Brightwell had an annual physical performed by Nurse Practitioner

("NP") Bernard Alenda, who noted that Brightwell's visual acuity at that time was 20/50 in his left

eye ("OS"); 20/50 in his right eye ("OD"); and 20/50 in both eyes ("OU").  ECF 31-8, at 17–18.

---

[8] Medical Defendants aver that though Brightwell is housed at a state facility, the committee that
reviews consultation requests at that facility follows the recommendation of the Federal Bureau of
Prisons for cataract surgery.  ECF 31-1, at 4.

During his annual physical the following year, on March 24, 2022, Brightwell's vision had deteriorated.  ECF 31-2, at 8 ¶ 22; ECF 31-7, at 3–4.  Alenda noted that Brightwell's vision in his left eye was 20/200; his right eye was 20/70; and for both eyes his vision was 20/70.  ECF 31-7, at 3.  Brightwell did not use his glasses for the acuity test.  *Id.* at 4.  Alenda also noted that Brightwell's eyes appeared normal.  *Id.*

On November 12, 2022, Brightwell was examined by an optometrist in response to his complaints of blurred vision.  ECF 31-2, at 10 ¶ 28; ECF 31-10, at 15.  It was noted at that time that Brightwell had a "significant cataract" in his left eye.  ECF 31-10, at 15.  His visual acuity was 20/30 in his right eye and 20/400 in his left eye.  *Id.*  A prescription for new glasses was written and a consultation with an ophthalmologist was requested to assess Brightwell's cataract.  *Id.* at 17.  Brightwell received his new glasses on January 30, 2023.  ECF 31-5, at 25; ECF 31-9, at 33.

On April 25, 2023, Brightwell was seen by Registered Nurse ("RN") Victoria Olaniyi for his complaints of blurry vision and a need for his toenails to be clipped.  ECF 31-2, at 12–13 ¶ 37; ECF 31-4, at 23–24.  Olaniyi referred Brightwell to a foot doctor for his toenails after noting he had an ingrown toenail.  ECF 31-4, at 24.  She also noted that Brightwell's visual acuity was tested, revealing he had acuity of 20/50 in both eyes and 20/50 in his right eye but could not see anything through his left eye.  *Id.*  She wrote that she planned to refer Brightwell to ophthalmology.  *Id.*  However, Dr. Temesgen notes that as a registered nurse, Olaniyi is not authorized to submit consultation requests for outside ophthalmology visits; only mid-level and upper-level providers may make such a request.  ECF 31-2, at 13.  Dr. Temesgen surmises that "Olaniyi likely submitted a request for the optometrist, not the ophthalmologist."  *Id.*

Brightwell requested to be seen by an optometrist on May 5, 2023.  ECF 31-2, at 13 ¶ 38; ECF 31-4, at 19–20.  Brightwell also made this request on May 17 and 29, 2023.  ECF 31-2, at 13

¶¶ 39 and 40; ECF 31-4, at 15–18.  On May 17, 2023, Brightwell reported he was "unable to see out of [his] left eye."  ECF 31-4, at 17.  On May 29, 2023, Brightwell reported that he was scheduled to see the eye doctor the following day.  *Id.* at 16.

On June 3, 2023, Brightwell was seen by an optometrist.  ECF 31-2 at 14, ¶ 41; ECF 31-10 at 14.  The optometrist noted that Brightwell had not been seen by an ophthalmologist as requested and wrote a second referral for Brightwell to be seen.  *Id.*  At that time, Brightwell's visual acuity was 20/50 in his right eye and 20/400 in his left eye.  *Id.*

On June 13, 2023, an "urgent consultation request for Ophthalmology" was submitted by Registered Nurse Practitioner ("RNP") Nathan McKoy.  ECF 31-2, at 14 ¶ 42; ECF 31-4, at 12–13.  The referral request was returned the following day with the Utilization Management disposition stating that "FBOP recommends surgery if corrected visual acuity is worse than 20/60 in both eyes.  Consider observation."  ECF 31-4, at 14.

On September 29, 2023, Brightwell made a request to RN Kelsey Robinson to be seen by the ophthalmologist for his left eye cataract.  ECF 31-2, at 15 ¶ 46; ECF 31-3, at 22–24.  Brightwell also asked to have his toenails clipped and he was referred to podiatry for an annual diabetes foot exam.  ECF 31-3, at 22.

Brightwell again complained on November 8, 2023, that he had not received eye surgery for his cataract.[9]  ECF 31-2, at 15–16 ¶ 47; ECF 31-3, at 18–19.  The following day Brightwell saw Dr. Michael Agonafir for chronic care.  ECF 31-2, at 16 ¶ 48; ECF 31-3, at 12–16.  Dr. Agonafir assessed Brightwell with "disorder of binocular vision" and noted his vision was

---

[9] Brightwell allegedly described this surgery to Nurse Robinson as "recommended," ECF 31-3, at 19, despite being told several times by other providers that he had not been approved for cataract surgery, ECF 31-2, at 16 ¶ 48.

worsening.  ECF 31-3, at 14.  Dr. Agonafir noted that an ophthalmology consultation would be requested.  *Id.*

On January 17, 2024, Brightwell again requested eye surgery when he was seen by CRNP Ikanke Edem.  ECF 31-2, at 17 ¶ 51; ECF 31-10 at 3–5.  Edem referred Brightwell to optometry for assessment of "bilateral cataracts."  ECF 31-10, at 5.

With regard to Brightwell's claim that Medical Defendants are not scheduling him for toenail clipping, the medical records submitted by Medical Defendants indicate otherwise. Records reflect that Brightwell had his toenails trimmed on the following dates: January 18, May 6, August 2, and December 8, 2021; July 18 and December 14, 2022; and November 22, 2023. *See* ECF 31-2, at 4, 5, 7, 9, 10, and 16; ECF 31-3, at 11; ECF 31-5, at 21; ECF 31-6, at 11; ECF 31-7, at 13; ECF 31-8, at 1,16, and 33.  Records reflect that Brightwell did not show up for scheduled toenail clippings on the following dates: July 23, July 28, July 30, and August 1, 2021; and November 4, 2023.  *See* ECF 31-2, at 5 ¶¶ 12, 14; ECF 31-8, at 4–5, 9; ECF 31-3, at 20.

Based on these records, Medical Defendants assert that they are entitled to summary judgment in their favor because they have not been deliberately indifferent to Brightwell's serious medical need.

### D.   Correctional Defendants

Correctional Defendants have not provided exhibits in support of their Motion to Dismiss, or in the alternative, for Summary Judgment.[10]  ECF 34.  They contend that the claims raised against them in their official capacities are barred by the Eleventh Amendment; they are entitled to qualified immunity for the claims against them in their personal capacities; they did not directly

---

[10] Given the absence of exhibits, the motion will be analyzed as a Motion to Dismiss.

participate in Brightwell's medical care; and the allegations asserted by Brightwell regarding the passcode on his tablet do not state a claim.  *Id.*

## II.    Non-dispositive motions

Brightwell filed Motions for Injunctive Relief (ECF 10); to Appoint Counsel or Hold a Hearing (ECF 20); and for Sanctions (ECF 33).  Each motion is addressed below.

### A.    Injunctive Relief

Brightwell's Motion for Injunctive Relief mostly concerns his pain medication dosage which, as noted, is the subject of a different lawsuit.  ECF 10.  He adds at the end of the motion that he wants this Court to order "immediate surgery" for his cataracts.  *Id.*  Brightwell claims his eyesight is worsening and he is nevertheless denied cataract surgery.  ECF 10-2, at 2.  He argues that requiring Defendants to have him seen by a "qualified suitable expert eye doctor" and providing him with the care prescribed by that doctor would not create a hardship for them since they are already obligated to provide medical care for the prison population.  *Id.* at 4.  Brightwell adds that he is likely to succeed with his claims because defendants have intentionally interfered with required medical care and the public interest will be served if he is given injunctive relief because "it is always in the public interest for prison officials to obey the law."  *Id.* at 4–5.

A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346–47 (4th Cir. 2009).  "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), *see also*

*SAS Inst., Inc. v. World Programming Lmtd*, 874 F.3d 370, 385 (4th Cir. 2017) (satisfying four-prong test is "a high bar, as it should be.").

As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994) ("Indeed, intrusive and far-reaching federal judicial intervention in the details of prison management is justifiable only where state officials have been afforded the opportunity to correct constitutional infirmities and have abdicated their responsibility to do so."). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). Additionally, under 18 U.S.C. § 3626(a)(2):

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

*Id.*

Here, Brightwell is, in effect, asking this Court to substitute its judgment for the judgment of the doctors caring for him by requiring them to give him cataract surgery.  Treatment that has been prescribed by a doctor supports an inference that the treatment is needed and the failure to provide it is evidence of deliberate indifference.  *Jackson v. Lightsey*, 775 F.3d 170, 179 (4th Cir. 2014) (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk).  "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences."  *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999); *see also Jackson*, 775 F.3d at 178 (describing the applicable standard as an "exacting" one).  Because Medical Defendants initially chose a conservative approach regarding Brightwell's cataract, it remains unclear whether Brightwell now qualifies for the surgery under the standard adopted by the Federal Bureau of Prisons.  For that reason, the Court will not grant the relief requested but will instead require Medical Defendants to file a status report updating the Court on Brightwell's eyesight.  In the interim, his Motion for Injunctive Relief shall be denied without prejudice.

### B.      Appointment of Counsel

Brightwell states in his Motion to Appoint Counsel that due to his deteriorating eyesight he is unable to read legal books to aid in drafting pleadings.  ECF 20, at 1.  He adds that he has been on segregation since 2018, and he stays in his cell 24 hours a day leaving only twice a week for showers or when he is called to the medical department.  *Id.* at 2.

Brightwell's request for counsel will be denied.  Under 28 U.S.C. § 1915(e)(1), the Court has discretion to appoint counsel for indigent civil litigants in exceptional circumstances.  *See Bailey-El v. Hous. Auth. of Balt. City*, 185 F. Supp. 3d 661, 670 (D. Md. 2016) (citing *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975), *aff'd in part, vacated on other grounds,* 686 F. App'x

228 (4th Cir. 2017).  Whether exceptional circumstances exist is a fact-specific determination.  *See Whisenant v. Yaum*, 739 F.2d 160, 163 (4th Cir. 1984)*, abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989).  Exceptional circumstances exist where (1) "the plaintiff 'has a colorable claim'" and (2) "considering the claim's objective complexity and the plaintiff's subjective abilities, . . . the plaintiff 'lacks the capacity to present it.'"  *Jenkins v. Woodard*, ___ F. 4th ___, No. 22-6197, 2024 WL 3490967, at *4 (4th Cir. July 22, 2024) (quoting *Whisenant*, 739 at 162).

In *Jenkins*, the Fourth Circuit recently emphasized that in determining whether exceptional circumstances warrant appointment of counsel to a civil litigant, a district court should consider a litigant's carceral status, educational background, legal understanding, mental illness, and ability to access both legal research materials and evidence, as well as whether the case depends on the competing credibility of witnesses, who the pro se litigant would have difficulty cross-examining without the aid of a lawyer.  2024 WL 3490967, at *4.

Even assuming Brightwell presents colorable claims, appointment of counsel is nonetheless not warranted here.  Brightwell is, of course, incarcerated, which obviously makes it difficult to litigate his case.  However, Brightwell is an experienced litigant who has shown ample ability to draft pleadings and raise arguments on his own despite being incarcerated.[11]  While he notes the impacts that his vision impairment has had on his ability to litigate, he requests the

---

[11] A cursory search of CM/ECF reveals that while incarcerated, Brightwell has filed and litigated dozens of federal lawsuits against numerous defendants in this Court.  *See, e.g.*, *Brightwell v. Vincent, et al.*, Civ. No. 08-1965-DKC (D. Md. filed July 24, 2008); *Brightwell v. Vincent, et al.*, Civ. No. 09-816-DKC (D. Md. filed Mar. 31, 2009); *Brightwell v. O'Malley, et al.*, Civ. No. 11-1652-DKC (D. Md. filed June 15, 2011); *Brightwell v. Warden of MCI-J, et al.*, Civ. No. 18-3807-RDB (D. Md. filed Dec. 11, 2018).  He has also litigated appeals in which his motions for counsel were summarily denied.  *See Brightwell v. Vincent*, 404 F. App'x 780 (4th Cir. 2010); *Brightwell v. Gang*, No. 21-7751, 2022 WL 2901726, at *1 (4th Cir. July 22, 2022).

alternative remedy of having a hearing to have any motions "read aloud" so that he can respond orally. ECF 20, at 1. Brightwell's request for counsel was filed months ago, providing ample time for Brightwell to procure assistance in reading, digesting, and responding to Defendants' filings, or to file a formal motion seeking an extension to file a response. In fact, Brightwell has submitted numerous typewritten filings since he requested counsel including a supplement to that request (ECF 24) and a Motion for Sanctions (ECF 33). In his supplement, Brightwell proposes another remedy: a continuance until he is able to respond to motions. ECF 24, at 1. The request for counsel was filed over four months ago, so the proposed alternative remedy has effectively been granted by the passage of time.

Regardless, in the months following this request, Brightwell did not file a response to the motion to dismiss or request any extensions. He did, however, choose to draft and file a motion seeking sanctions. ECF 33. In that filing, he noted that he'd made a written request for a docket sheet in this case and in BAH-23-797. *Id.* at 1. Thus, before and after the filing of the motion seeking appointment of counsel, Brightwell has been able to file neatly typewritten document that clearly articulate his positions. Mr. Brightwell makes no allegations of cognitive limitations that would impede the ability to present his case. Further, this case is one that, at least at this stage, appears to hinge on the unimpeached veracity of medical records drafted by Defendants prior to the filing of this lawsuit, not the eyewitness testimony of potentially biased witnesses whose recollections and alleged observations are best challenged with the assistance of competent counsel. Finally, Brightwell's clam is not particularly complex. Accordingly, even after *Jenkins*, no exceptional circumstances exist that warrant the appointment of an attorney to represent Brightwell under § 1915(e)(1) and the motion is denied.

### C.      Sanctions

In his Motion for Sanctions, Brightwell alleges that the Attorney General's Office has not served him with pleadings filed in this case and in Civil Action BAH-23-797 and has done so intentionally.  ECF 33.  In support of that conclusion Brightwell states that he did not get a copy of the motion for extension of time filed by counsel in this case.  He apparently believes that this failure is somehow related to him being "in prison for almost twenty eight years now against [his] will."  *Id.* at 2.

Under Fed. R. Civ. P. 11(c)(1) this Court may "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Additionally, "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4).  "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

Brightwell's allegation of misconduct related to the granting of an extension of time is meritless.  The record reflects that modest extensions to deadlines were granted by the Court.  These types of requests are common and there is nothing sanctionable about them.  Indeed, Brightwell himself sought an extension of time so that he could respond to a motion, ECF 22, which was granted by the Court, ECF 25.    Brightwell's allegation of misconduct by seeking extensions to deadlines is meritless.

As to the claim that the Attorney General's Office failed to serve him with copies of the request for an extension of time, Brightwell fails to explain why such a failure, even if it occurred,

merits a sanction.  The certificate of service attached to the motion for extension of time filed by the Attorney General's office on March 22, 2024, indicates that the motion was mailed to Brightwell on that date.  ECF 29.  It is possible that the mailing was not delivered through no fault of counsel.  In fact, since Brightwell makes no allegation that he did not receive other filings in this case, an innocent explanation of misdelivered mail seems far more plausible than Brightwell's claim that the document was intentionally kept from him.  Moreover, even if it is true that counsel failed to provide Brightwell with the filing, such a misstep is best cured by a reminder to counsel to send Brightwell copies of all filings made in the case.  While a self-represented pleading is not subjected to the same scrutiny as one drafted by an attorney, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Brightwell has failed to substantiate a violation of a rule of this Court and has not made the case for sanctions.  The Motion for Sanctions is denied.

## III.    Standards of Review

### A.    Motion to Dismiss

Defendant Jane Doe (2) and Correctional Defendants have filed Motions to Dismiss.  In reviewing the complaint pursuant to a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997)).  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).   Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss.  *Id.* at 555.   Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.   To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Twombly*, 550 U.S. at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' —'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B.   Summary Judgment

The motion filed by Medical Defendants is construed as one seeking summary judgment.[12] Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides "[t]he court shall grant

---

[12] Medical Defendants move for dismissal or for summary judgment.  A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd* 684 F.3d 462 (4th Cir. 2012).  Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has notice that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).  When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261; *see also* W*illey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 657 (D. Md. 2021)

summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this

does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of
> *some* alleged factual dispute between the parties will not defeat an
> otherwise properly supported motion for summary judgment; the
> requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon

the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing

that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d

514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The Court should

"view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in

her favor without weighing the evidence or assessing the witness' credibility."  *Dennis v. Columbia

Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  The Court must, however, also abide

by the "affirmative obligation of the trial judge to prevent factually unsupported claims and

defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted)

(quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett*,

477 U.S. 317, 323–24 (1986)).

---

("Notably, 'the Federal Rules do not prescribe that any particular notice be given before a Rule 12
motion is converted to a Rule 56 motion.'" (quoting *Ridgell v. Astrue*, Civ. No. DKC-10-3280,
2012 WL 707008, at \*7 (D. Md. Mar. 2, 2012))).  Brightwell has been on notice that Defendants
seek summary judgment since the filing of the motion on April 1, 2024, ECF 31, and after receiving
the Court's Rule 12/56 Notice, which was mailed on April 2, 2024, ECF 32.  *See* Fed. R. Civ. P.
12(d) (noting that if a court is going to treat a motion to dismiss as one for summary judgment,
"[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to
the motion").  As such, Defendants' dispositive submission will be treated as a Motion for
Summary Judgment under Federal Rule of Civil Procedure 56 because materials outside the
original pleadings have been considered.

IV.     **Analysis**

A.      **Jane Doe 2**

The sole mention of Jane Doe 2 in the complaint is that she informed Brightwell that he had a cataract in his left eye, and she advised he should be seen by an eye doctor.  ECF 1-1, at 4 ¶ 18.  A plaintiff may file suit under 42 U.S.C. § 1983 against any person who, acting under color of state law, deprives him "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Atty's Off.*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

"The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar*, 859 F.3d at 245.  To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Loftus v. Bobzien*, 848 F.3d 278, 284-85 (4th Cir. 2017); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).  Here, Brightwell has failed to pinpoint any specific right violated by Jane Doe 2 when she examined his eyes, diagnosed a cataract, and recommended he see an eye doctor.  Brightwell's conclusory allegation that Jane Doe 2 somehow

added to his suffering is devoid of any factual support and similarly does not identify the constitutional right that was violated when she diagnosed his cataract and recommended an eye doctor.  The complaint fails to state a claim against Jane Doe 2 and must be dismissed.

### B.    Medical Defendants

Brightwell raises an Eighth Amendment claim against Medical Defendants which requires evidence of both a serious medical need and deliberate indifference to that need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).   Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson*, 775 F.3d at 178.  "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition.  *See Farmer*, 511 U.S. at 839–40.  Under this standard, "the prison official must

have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable.*" *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (emphasis added) (quoting *Bowring v. Godwin,* 551 F.2d 44, 47–48 (4th Cir. 1977)). "[A]n inadvertent failure to provide adequate medical care" does not amount to deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *accord Anderson*, 877 F.3d at 543 ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing

*Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *accord Jackson*, 775 F.3d at 178 ("[W]e

consistently have found such disagreements to fall short of showing deliberate indifference.").

Assuming Brightwell's cataract and deteriorating vision is a serious medical need, it is not

immediately apparent that Medical Defendants have been deliberately indifferent to that need.

Here, the choice was made to simply monitor Brightwell's vision and, presumably, when he meets

certain criteria articulated by the FBOP, he will receive the surgery.

In support of the decision to deny surgery in favor of monitoring Brightwell's vision,

Medical Defendants cite the FBOP Ophthalmology Guidance as the basis for declining to provide

Brightwell with cataract surgery. ECF 31-1, at 4; *see also Ophthalmology Guidance,* Fed. Bureau

of Prisons (Feb. 2008), https://www.bop.gov/resources/pdfs/opthamology_guidance_2008.pdf.

The guidance states the following about cataract surgery:

> **Cataract Surgery**: There must be documentation of a best-corrected visual
> acuity of less than 20/60 in both eyes with current (less than six months old)
> refraction.  Second eye surgery requires a documented, best-corrected visual
> acuity of 20/100 or less.
>
> Exceptions could be made for town drivers at camps, or inmates working in
> UNICOR who require good stereoscopic vision (depth perception) for safety
> reasons.

*Ophthalmology Guidance*, at 5.  The guidance Medical Defendants rely on was published in 2008.

The Ophthalmology Guidance published in 2018 provides a slightly different standard for cataract

surgery:

> **Cataract Surgery**: Functional impairment resulting from the cataract is the
> primary factor in determining the need for surgery, as well as the likelihood of
> improved function following surgery.  Most people function well with a best-
> corrected visual acuity of 20/60 or better.  Documented best-corrected visual
> acuity of worse than 20/60 in both eyes with current (less than six-months-old)
> refraction is an indication for cataract surgery.  Second eye surgery requires
> documented, best-corrected visual acuity of 20/60 or worse.

*Ophthalmology      Guidance*,      Fed.      Bureau      of      Prisons      (Oct.      2018),

https://www.bop.gov/resources/health_care_mngmt.jsp.  The current guidance appears to shift the

focus from a required level of visual acuity to the level of functional impairment actually caused

by the cataract.   It is unknown whether application of this standard to Brightwell's current

condition would warrant surgery and if not, why surgery is not warranted.  Given the lack of current

information about Brightwell's eyesight and the apparent reliance on an outdated guideline, the

Motion for Summary Judgment will be denied without prejudice pending a status report from

Medical Defendants advising the Court of any changes in the selected course of care for

Brightwell.

### C.       Correctional Defendants

Brightwell's claims against the Correctional Defendants pertain to their handling of his

ARP complaints regarding his tablet and their failure to intervene on his behalf to secure cataract

surgery for him.   Brightwell adds that all of the acts these defendants allegedly engaged in are

retaliatory.

Brightwell's "tablet claim" does not implicate a protected federal constitutional right and

his conclusory claim of retaliation without a showing of actual injury similarly does not state a

claim.  Liberally construed, Brightwell's claim regarding his tablet implies he has been denied the

ability to communicate with friends and family and to put in orders for commissary items.  Neither

of those activities is a protected liberty interest that may not be withdrawn without due process of

law.  Prisoners have a liberty interest in avoiding confinement conditions that impose "atypical

and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*

*v. Conner*, 515 U.S. 472, 484 (1995).   Whether confinement conditions are atypical and

substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily . . . . fact

specific" comparative exercise. *Beverati v. Smith*, 120 F.3d 500, 502-03 (4th Cir. 1997) (quoting *Sandin*, 515 U.S. at 483-84); *accord Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ("There is no single standard for determining whether a prison hardship is atypical and significant, and the condition or combination of conditions or factors . . . . requires case by case, fact by fact consideration." (alteration in original) (internal quotation marks omitted)). Any failure by correctional staff to repair Brightwell's tablet does not constitute atypical and substantially harsh conditions for which Brightwell may recover damages.

For Brightwell to prevail on a claim of retaliation, he "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. *See Burton v. Livingston*, 791 F.2d 97, 100–01 (8th Cir. 1986) (holding as sufficient to state claim a "complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death"). However, "[a] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone." *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D.N.C. 1996) (conclusory allegations of retaliation insufficient to state claim), *judgment vacated on other grounds by* 525 U.S. 802 (1998). The Fourth Circuit has explained:

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACLU of Md., Inc. v. Wicomico Cnty.,* 999 F.2d 780, 785 (4th Cir. 1993).  "In the prison context, [courts] treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams*, 40 F.3d at 74).  Under this standard, Brightwell's retaliation claims must be dismissed since it is presented in wholly conclusory terms.

To the extent that Brightwell faults Correctional Defendants for failing to intervene on his behalf regarding his cataract surgery, this claim also fails.  Correctional personnel typically are not liable for deliberate indifference when they allow the medical staff to make decisions about medical care.  *See Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990) (noting that a warden was entitled to rely upon the health care providers' expertise); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (stating that "[i]f a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"); *Shelton v. Angelone*, 148 F. Supp. 2d 670, 678 (W.D. Va. 2001) ("Prison personnel may rely on opinion of the medical staff as to the proper course of treatment.").  After gaining assurances that Brightwell's condition was being monitored, Correctional Defendants did not have a duty to convince medical care providers that they were wrong.   The claims against Correctional Defendants shall be dismissed.

**V.      Conclusion**

For the reasons stated herein, the Motions to Dismiss filed by Jane Doe 2 and Correctional Defendants shall be granted; the Motion for Summary Judgment filed by Medical Defendants shall be denied without prejudice pending a status report as set forth in the Order accompanying this Memorandum Opinion.  Brightwell's motions for injunctive relief and for appointment of counsel shall be denied without prejudice; and the motion for sanctions shall be denied.

A separate Order follows.

<u>August 1, 2024</u>                                                        /s/
Date                                                      Brendan A. Hurson
                                                          United States District Judge